## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

**PROGRESSIVE NORTHWESTERN
INSURANCE COMPANY,**

        **Plaintiff,**

**vs.**                          **Civ. No.  05-0817 JCH/ACT**

**WEED WARRIOR SERVICES and
BRENDA ETCHEVERRY,**

        **Defendants.**

### MEMORANDUM OPINION AND ORDER

This matter comes before the Court on cross-motions for summary judgment.  Plaintiff Progressive Northwestern Insurance Company's ("Progressive's") motion [Doc. 81] and accompanying brief [Doc. 82] as well as Defendant Brenda Etcheverry's ("Mrs. Etcheverry's") motion [Doc. 79] and accompanying brief [Doc. 80] were both filed April 28, 2008.  In addition, Mrs. Etcheverry filed a *Motion for Leave to File a Surreply to Progressive's Motion for Summary Judgment* [Doc. 99] on June 13, 2008.   The Court having considered the motions, briefs, and relevant law, and being otherwise fully informed, finds that Progressive's motion for summary judgment [Doc. 81] should be DENIED, Mrs. Etcheverry's motion for summary judgment [Doc. 79] should also be DENIED, and Mrs. Etcheverry's *Motion for Leave to File a Surreply* [Doc. 99] should be DENIED as well.

### BACKGROUND

On September 26, 2000, Mrs. Etcheverry was involved in a motor vehicle accident and injured.  The vehicle that she was occupying when injured was not owned by her or a member of her household, nor was it insured by a policy on which she was the named insured.  Instead, at

the time of the accident, Mrs. Etcheverry was working in her capacity as a school security officer and driving a car owned by the Carlsbad Municipal Schools.

Mrs. Etcheverry settled her claim against the tortfeasor for his policy limits of $100,000. Ms. Etcheverry then sought to claim an additional settlement under a commercial automobile insurance policy ("the policy") issued by Progressive to Defendant Weed Warrior Services ("WWS"), under which Mrs. Etcheverry was a named driver. WWS was a company owned by Mrs. Etcheverry's husband that engaged in the business of spraying weeds. The policy provided $100,000 in uninsured/underinsured motorist ("UM/UIM") coverage for each accident. On September 25, 2006, the Court issued a memorandum opinion and order granting Progressive's motion for summary judgment [Doc. 20] and issued a declaratory judgment in favor of Progressive [Doc. 21] holding that any amount due to Mrs. Etcheverry under the UM/UIM portion of her insurance policy should be offset by the amount of liability proceeds received from the tortfeasor. Because the amount Mrs. Etcheverry claimed under the UM/UIM policy equaled the amount recovered from the tortfeasor, the Court held that Progressive had no duty to provide UM/UIM coverage to Mrs. Etcheverry for injuries that arose out of the accident.

However, that declaratory judgment did not end the case. On October 10, 2006, Mrs. Etcheverry filed a motion to amend the declaratory judgment [Doc. 23], arguing that her previous counsel had failed to notify her of Progressive's declaratory judgment lawsuit or to consult with her at all regarding the defense of the suit. After a hearing on August 14, 2007, the Court issued an order [Doc. 39] granting Mrs. Etcheverry's motion to amend the declaratory judgment, thereby allowing Mrs. Etcheverry to supplement her response to Progressive's motion for summary judgment. The Court's order did not allow Mrs. Etcheverry to reargue the offset issue that had been decided against her, but rather enabled her to raise for the first time the

2

argument that her UM/UIM limits should be reformed to be $1 million rather than the $100,000 reflected on her policy.  Progressive filed a motion for reconsideration of the Court's decision allowing Mrs. Etcheverry to present her argument on the UM/UIM policy limits [Doc. 42], and on March 31, 2008, the Court issued a memorandum opinion and order [Doc. 76] denying Progressive's motion.  The cross-motions for summary judgment that are currently before the Court followed.

## SUMMARY JUDGMENT STANDARD

In diversity of citizenship cases such as this one, the forum state's substantive law governs the analysis of the underlying claims, but federal law determines the propriety of the court's summary judgment ruling.  *See Hill v. Allstate Ins. Co.*, 479 F.3d 735, 739 (10th Cir. 2007).  "Summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

## DISCUSSION

In her brief supporting her motion for summary judgment [Doc. 80], Mrs. Etcheverry argues that the UM/UIM limits of her policy should be reformed to provide $1 million in coverage in order to match the liability limits of the policy.  She argues that New Mexico law requires that a policy contain a written rejection of UM/UIM coverage for any limit lower than the policy's liability limits, and that, because the purchaser of the insurance did not execute such a written rejection, the maximum UM/UIM coverage must therefore be read into the policy by the Court.  Progressive's brief supporting its motion for summary judgment [Doc. 82] argues that Mrs. Etcheverry is not a covered insured, and therefore not entitled to UM/UIM coverage in

any amount, so the Court should not even reach the question of what the UM/UIM policy limits should be.

The Court will address Progressive's contention first, as New Mexico courts have made clear that the first question to look at in a claim for coverage under an insurance contract is whether the claimant qualifies as an "insured." *See Jaramillo v. Providence Washington Ins. Co.*, 117 N.M. 337 (1994); *Herrera v. Mountain States Mutual Cas. Co.*, 115 N.M. 57 (1991). Only those who qualify as "insureds" are entitled to any coverage, including UM/UIM coverage. *See Morro v. Farmer's Ins. Group*, 106 N.M. 669, 670-71 (1998); *Gamboa v. Allstate Ins. Co.*, 104 N.M. 756, 758 (1986).

A.  Whether Mrs. Etcheverry is an Insured

In its motion for summary judgment, Progressive claims that the policy at issue only covers the vehicles specifically listed in the policy and occupants of those vehicles.  Because Mrs. Etcheverry's accident occurred while she occupied a vehicle that was not specifically listed in the policy, Progressive now argues that she has no coverage under the policy.  However, this argument contradicts Progressive's position taken earlier in this case.

At the outset of this case, when Mrs. Etcheverry sought only the $100,000 of UM/UIM coverage specified in the policy, Progressive never contested coverage when making its offset argument.  In fact, in its own Statement of Undisputed Facts in its brief accompanying its motion for summary judgment on the offset issue, Progressive stated "[u]nder said policy, Brenda Etcheverry and her husband John Etcheverry were named drivers and covered under said policy."  Doc. 13 at 2, ¶ 2.  Progressive went on to state that "Plaintiff argues and Defendant acknowledges that the available UM/UIM coverage under the policy is $100,000."  *Id.* at 3, ¶ 10. Similarly, in the Initial Pretrial Report jointly submitted by Progressive and Mrs. Etcheverry, the

4

parties stipulated that Mrs. Etcheverry was covered under the policy, Doc. 11 at 2, ¶ 2, and stated that "Plaintiff has under the Progressive policy of insurance, specifically under the UM/UIM portion available $100,000." *Id.* at 1.  Stipulations such as these are generally considered judicial admissions, and courts routinely accept them because they increase the efficiency of the judicial process. *See Miller v. Eby Realty Group LLC,* 396 F.3d 1105, 1116 (10th Cir. 2005). Perhaps Progressive made a strategic decision initially to acknowledge coverage rather than contest it because it reasoned that disposing of the matter with the offset argument would be more expedient than contesting coverage.  Regardless of its reasoning, Progressive cannot now retreat from its earlier fundamental admission simply because circumstances have changed and the amount at stake is greater.  Progressive will be held to its initial admission that Mrs. Etcheverry is covered under the policy.[1]

B.  Whether UM/UIM Policy Limits Should be Reformed to $1 Million

In January, 2000, prior to Mrs. Etchevery's accident, her husband ("Mr. Etcheverry") purchased a commercial automobile policy from Progressive through an independent agent.  The named insured was listed as Weed Warrior Services.  The application listed Mr. and Mrs. Etcheverry, as well as their son, as drivers of a single insured vehicle to be used in their business.[2]  On the second page of the application, Mr. Etcheverry selected liability limits of $1 million and a UM/UIM combined single limit coverage of $100,000.  The application page listed

___

[1] The Court notes that it considers Mrs. Etcheverry to be a covered insured in this case solely because of Progressive's initial admissions.  It expresses no opinion as to whether Mrs. Etcheverry would otherwise be considered a covered insured or if a similarly situated person under a similar policy should be considered a covered insured if injured while occupying a non-covered vehicle.

[2] At the time of the accident, the policy in place had been amended to list a second insured vehicle, but was otherwise identical to the initial policy in all material respects.

several potential levels of UM/UIM coverage, ranging from $25,000 up to $1 million.  Above the signature line on the application, signed by Mr. Etcheverry, were a number of statements, including the following: "I understand several options of Uninsured/Underinsured Motorists Coverage are available and they have been explained to me.  The option selected on this application is the option I desire."  Mr. Etcheverry was never asked to sign, nor did he sign, a separate statement specifically acknowledging that he was selecting UM/UIM coverage that was less than his liability limit of $1 million.  Mrs. Etcheverry contends that New Mexico law requires that anyone selecting UM/UIM coverage at a level less than their policy's liability limits must execute a written rejection of the maximum limits and, in the absence of such a written rejection, a court must reform the policy to reflect UM/UIM coverage equal to the policy's liability limits.

When facing an issue of state law that has not been definitively settled by state appellate courts, if a federal court does not certify the question to the state appellate court for review, it should endeavor to determine what the state's highest court would do if confronted with the same issue.  *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938).  The Court does not believe that the New Mexico Supreme Court would adopt the position advocated by Mrs. Etcheverry.[3]

New Mexico's uninsured motorist statute requires every automobile liability policy to include uninsured motorist coverage.  NMSA 1978 § 66-5-301(A).  Uninsured motorist coverage must also include "underinsured motorist coverage," which is used to make up the difference between the tortfeasor's liability coverage and the insured's uninsured motorist limit, where the

---

[3] In reaching its conclusion, the Court is aware of *Farm Bureau Mut. Ins. Co. v. Jameson*, 472 F. Supp. 2d 1272 (D. N.M. 2006), which addressed a situation very similar to this one, but it respectfully declines to follow that decision.

tortfeasor's limits are less than the insured's uninsured motorist coverage limits.  *Id*. § 66-5-301(B).  The purchaser of a policy may also choose to opt out of purchasing any UM/UIM coverage.  *Id*. § 66-5-301(C) ("The named insured shall have the right to reject uninsured motorist coverage as described in Subsections A and B of this section.").

Unless it is completely rejected, New Mexico's statute requires that the level of UM/UIM coverage provided by an insurance company must meet at least the minimum floor set by the Mandatory Financial Responsibility Act, *id*. § 66-5-215, "and such higher limits as may be desired by the insured, but up to the limits of liability specified in bodily injury and property damage liability provisions of the insured's policy."  *Id*. § 66-5-301(A).  The minimum floor set for UM/UIM coverage is $25,000.  Thus, an insured who does not choose to completely opt out of purchasing UM/UIM coverage may purchase it in an amount ranging from $25,000 all the way up to the insured's liability limits.  New Mexico's statute stands in contrast to statutes in a number of other states that require an insured to purchase UM/UIM coverage with limits *equal to* their liability limits unless they specifically opt out.  *See e.g.*, Or. Rev. Stat. § 742.502(2)(a) (2001) (providing for UM/UIM coverage in amounts equal to liability limits unless named insured elects lower limits in writing); Tenn. Code Ann. § 56-7-1201(a) (2000) (UM/UIM coverage equal to liability limits is the default unless named insured rejects all UM/UIM coverage in writing or selects lower limits).

New Mexico's legislature authorized the superintendent of insurance to promulgate rules governing UM/UIM coverage.  NMSA 1978 § 66-5-301(A).  The superintendent's regulation regarding "Rejection of Uninsured Motorist Coverage" requires that such rejection be made in writing and be "made a part of the policy of bodily injury and property damage insurance."  NMAC 13.12.3.9.  This rule has been strictly construed against insurers.  *See Kaiser v.*

7

*DeCarrera*, 122 N.M. 221 (1996) (even though insured knowingly signed a written rejection of all UM/UIM coverage, such rejection was ineffective because it was not included with the policy delivered to the insured); *Romero v. Dairyland Ins. Co.*, 111 N.M. 154 (1990) (written rejection of UM/UIM coverage must be attached to the policy or coverage is inferred).

In this case, Mr. Etcheverry selected and paid for liability limits of $1 million and UM/UIM limits of $100,000.  Progressive's policy declarations page sent to Mr. Etcheverry clearly reflected this selection.  Rather than rejecting all UM/UIM coverage, or even purchasing the minimum limits of $25,000, Mr. Etcheverry affirmatively purchased "such higher limits as...desired by the insured," as apparently contemplated by the legislature in NMSA 1978 § 66-5-301(A).  Thus, the only way for Mrs. Etcheverry to prevail is for the Court to find that the affirmative selection of a UM/UIM coverage limit in any amount less than the full liability limits constitutes a "rejection" of UM/UIM coverage that must be made in writing.  This, the Court cannot do.

The Court is mindful that, in interpreting statutory provisions, its fundamental objective is to determine and give effect to the legislature's apparent intent.  *See Smith Mach. Corp. v. Hesston, Inc.*, 102 N.M. 245, 246 (1985).  A statute should, if possible, "be construed according to its plain meaning and, as a whole, giving meaning to all its parts."  *Stickley v. State Farm Mut. Auto Ins. Co.*, 505 F.3d 1070, 1077 (10th Cir. 2007).  Section 66-5-301(A) does not discuss "rejection" of UM/UIM coverage in any way.  It only states that an insurer must provide UM/UIM coverage at a minimum level, with "such higher limits as may be desired by the insured" up to a maximum of bodily injury liability limits.  Subsection B simply addresses the requirement that underinsured motorist coverage must be included with the uninsured motorist coverage described in Subsection A.  Only Subsection (C) speaks of rejection, stating that the

named  insured may "reject uninsured motorist coverage as described in Subsections A and B of this section."  The plain meaning of "reject" in this context implies a complete rejection, not a partial one, and indicates nothing less than a refusal to take the coverage described in Subsections A and B.

Similarly, the plain meaning of the superintendent of insurance's regulation governing rejection of UM/UIM coverage speaks only to a complete rejection of all UM/UIM coverage, not to an insured's choice to purchase lower UM/UIM coverage limits than bodily injury coverage limits.  The regulation, in its entirety, reads: "The rejection of the provisions covering damage caused by an uninsured or unknown motor vehicle as required in writing by the provisions of Section 66-5-301 NMSA 1978 must be endorsed, attached, stamped, or otherwise made a part of the policy of bodily injury and property damage insurance."  NMAC 13.12.3.9.  Quite simply, nothing in the plain language of either the statute or the regulation can be read to indicate that the selection of any level of UM/UIM coverage less than full bodily injury liability coverage constitutes a "rejection" of UM/UIM coverage requiring a written waiver.  If the Legislature had followed the lead of other states and sought to make UM/UIM coverage equal to liability coverage the default situation, any deviation from which would require a waiver, it could have. It did not.

Nor does New Mexico case law compel the result sought by Mrs. Etcheverry.  The relevant decisions interpreting the UM/UIM rejection statute and the superintendent of insurance's regulation on rejection concern cases where the insured chose not to purchase any UM/UIM coverage at all (i.e., a complete rejection of coverage), not to situations where the insured chose to purchase UM/UIM coverage at a lower limit than the liability policy limit, and nothing in the courts' decisions indicates an intention for their holdings to extend beyond the

9

complete rejection scenario.

In discussing the purpose of the underinsured motorist coverage statute, the New Mexico Supreme Court found that "the intent of the Legislature was to put an injured insured in the same position he would have been in had the tortfeasor had liability coverage in an amount equal to the *uninsured/underinsured motorist* protection purchased for the insured's benefit." *Schmick v. State Farm Mut. Auto Ins. Co.*, 103 N.M. 216, 219 (1985) (emphasis added). Such a result is precisely what occurred in this case. Mrs. Etcheverry received $100,000 from the tortfeasor's insurance company, because that was the limit of his liability coverage. If the tortfeasor's liability coverage had been less than $100,000, Mrs. Etcheverry would have received the difference through her UM/UIM policy, resulting in the same $100,000 recovery. Thus, the Legislature's intent, as stated by the *Schmick* court, was met in this case. The *Schmick* court did not find that the Legislature's intent was to put an injured insured in the same position she would have been in had the tortfeasor had liability coverage in an amount equal to the *liability limits* purchased for the insured's benefit. Only if that had been its finding would reforming the UM/UIM coverage to $1 million be compelled.

In *Romero*, the New Mexico Supreme Court found that the superintendent of insurance's regulation requiring that a written rejection of UM/UIM coverage be made part of the policy "furthers a legislative purpose to *provide for the inclusion of uninsured motorist coverage in every automobile liability policy* unless the insured has knowingly and intelligently waived such coverage." *Romero*, 111 N.M. at 156 (emphasis added). This language speaks only to situations of total rejection of coverage, as it is only in those situations that "the inclusion of uninsured motorist coverage in every automobile liability policy" without knowing and intelligent waiver would be at risk. In the instant case, the liability policy did include uninsured motorist coverage,

10

at a level greater than minimum coverage.  Thus, the legislative purpose identified by the

*Romero* court was met.

In further interpreting the superintendent of insurance's regulation, the *Romero* court

stated:

> [Regulation 13.12.3.9] ensure[s] that the insured has affirmative evidence of the
> extent of coverage.  Upon further reflection, consultation with other individuals, or
> after merely having an opportunity to review one's policy at home, an individual
> may well reconsider his or her rejection of uninsured motorist coverage.  Providing
> affirmative evidence of the rejection of coverage comports with a policy that any
> rejection of the coverage be knowingly and intelligently made.  Any individual
> rejecting such coverage should remain well informed of that decision.

*Id*. at 156-57.

Nothing in this passage indicates that the *Romero* court was referring to any situation

other than a complete rejection of coverage.  The passage addresses a problem present in a

complete rejection of coverage scenario that is not present in a situation where the insured

merely purchases some amount less than the maximum UM/UIM coverage, namely that in the

complete rejection of coverage scenario, nothing on the insured's policy declarations page would

alert them to the absence of such coverage.  Hence, the *Romero* court's finding that the

regulation ensures that the insured has evidence of the extent of her coverage.  Because the

declarations page of a policy that reflects an affirmative selection of UM/UIM coverage in some

positive amount (even though less than the liability limit) clearly discloses those selected limits,

it is unquestionably a different situation from one that would require the regulation to "ensure

that the insured has affirmative evidence of the extent of coverage."

Likewise, in its ruling in *Kaiser*, the New Mexico Supreme Court held that although the

insured had knowingly and intentionally signed a form indicating his complete rejection of

UM/UIM coverage, such rejection was not valid because the rejection notice was not included in

the insured's policy.  122 N.M. at 225.  In arriving at its decision, the *Kaiser* court again focused on the fact that no affirmative evidence of a complete rejection of UM/UIM coverage would be present on a declarations page and that the purpose of the regulation is to "provide[] the insured with affirmative evidence of the extent of coverage for *future* reference."  *Id*. at 224 (emphasis in original).  Because the declarations page of a policy that includes UM/UIM coverage clearly states the coverage level, the insured is provided with precisely the "affirmative evidence of the extent of coverage for future reference" that would be missing in the *Kaiser* and *Romero* scenarios of complete rejection of UM/UIM coverage.

Based on the plain language of the statute and regulation, the New Mexico Supreme Court's interpretation of the purpose behind the statute and regulation, and the significant distinction between this case and prior case law, the Court does not believe that the New Mexico Supreme Court would find that the affirmative selection of a level of UM/UIM coverage in an amount less than full liability coverage constitutes a "rejection" of coverage such that an insurer must obtain a written waiver of coverage and include it in the policy.  Although NMSA 66-5-301 is a remedial statute which must be liberally interpreted to further its purpose, *Romero,* 111 N.M. at 156, the Court feels that this purpose as expressed in the plain language of the statute and as interpreted in case law is already well-served without expanding the statute far beyond its common-sense reading, as would be necessary to do if Mrs. Etcheverry's claim were to be upheld.  The Court therefore holds that the policy should be enforced as written, to provide $100,000 in UM/UIM coverage, which is offset by the $100,000 already received from the tortfeasor, rather than being reformed to provide $1 million in UM/UIM coverage.

C.  Mrs. Etcheverry's Motion to File Surreply

On June 11, 2008, Mrs. Etcheverry filed a combined objection to an affidavit filed by

12

Progressive and a motion to file a surreply to respond to the material contained in the affidavit. [Doc. 98].  Mrs. Etcheverry contends that the affidavit "attempts to present new evidence that contradicts the witness' prior deposition testimony in a sham attempt to create an issue of material fact."  Doc. 98 at 3.  Because the affidavit concerned matters that were not relevant to the legal issues before the Court, it played no role in the Court's decision.  Mrs. Etcheverry's motion is therefore denied as moot.

<u>**CONCLUSION**</u>

**IT IS THEREFORE ORDERED** that Plaintiff Progressive Northwestern Insurance Company's motion for summary judgment [Doc. 81] and Defendant Brenda Etcheverry's motion for summary judgment [Doc. 79] and *Motion for Leave to File a Surreply to Progressive's Motion for Summary Judgment* [Doc. 99] are all **DENIED**.  Because of the Court's previous Amended Partial Declaratory Judgment [Doc. 40] finding that Progressive is entitled to offset its $100,000 in UM/UIM coverage against the $100,000 already recovered from the tortfeasor, and its current determination that the policy's UM/UIM coverage shall not be reformed, no issues remain to be determined in this case.

_____
**UNITED STATES DISTRICT JUDGE**

13